IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOOMIN CHARACTERS OY LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUAL, CORPORATION, LIMITED LIABILITY COMPANY, PARTNERSHIP, AND UNINCORPORATED ASSOCIATION IDENTIFIED ON AMENDED SCHEDULE A HERETO, <br><br> Defendant. | Case No. 25-cv-5920 <br><br> Judge Franklin U. Valderrama |

**SECOND AMENDED COMPLAINT**

Plaintiff, MOOMIN CHARACTERS OY LTD. ("Plaintiff" or "MOOMIN"), by undersigned counsel, hereby complains of the Individual, Corporation, Limited Liability Company, Partnership and Unincorporated Association identified in Amended Schedule A attached hereto (collectively, "Defendant"), and hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1338(a) - (b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since the Defendant directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Online Marketplace Account identified in Amended Schedule A attached hereto (collectively, the "Defendant Internet Store"). Specifically, Defendant is reaching out to do business with Illinois residents by operating a commercial, interactive Internet Store through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's MOOMIN Trademarks. The Defendant has targeted sales from Illinois residents by operating an online store that offers shipping to the United States, including Illinois, accepts payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. The Defendant is committing tortious acts in Illinois, engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

**INTRODUCTION**

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products").

4. Defendant created an Internet Store and designed it to appear to be selling genuine products licensed by Plaintiff ("Plaintiff's products"), while selling inferior imitations of Plaintiff's products. Defendant attempts to avoid liability by going to great lengths to conceal both its identity and the full scope and interworking of its illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendant's counterfeiting of Plaintiff's registered trademarks

as well as to protect unknowing consumers from purchasing unauthorized products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendant's actions and seeks injunctive and monetary relief.

5. This Court has personal jurisdiction over the Defendant, in that the Defendant conducts business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which the Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, the Defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFF

6. Plaintiff is a leading Finnish content and merchandise producer of MOOMIN character themed comic strips, books, illustrations, television series, films, merchandise and theme parks and is headquartered at Salmisaarenranta, 7 M Helsinki, Finland 00180.

7. The MOOMIN character family was originally conceived and developed in 1945 by artist Tove Jansson in writing and illustrations. The MOOMIN family, a family of white and roundish trolls with large snouts, and their friends live an adventurous life in the idyllic and peaceful Moominvalley in harmony with nature. Since 1945 thirteen original books have been published and translated into over 55 languages. The MOOMINS have since been the basis for numerous television series, films and theme parks in Japan and Finland. For example, the 4 Seasons of the Moominvalley series have been sold in over 60 countries. Further, the Plaintiff maintains over 35 MOOMIN shops and cafes globally. Plaintiff and its licensees are in the business of developing, marketing, selling and distributing MOOMIN products. Plaintiff's estimated annual retail value is upwards of 700 million EUR. Plaintiff was the winner of Best

Licensed Brand in the 2024 Licensing International Excellence Awards. Plaintiff, through its duly authorized licensees, is the official source of MOOMIN merchandise and products.

8. Plaintiff is the owner of U.S. Trademark Registration Nos. Nos. 4,523,736 for a stylized troll character mark ; and 5,056,717 for a stylized troll character mark ; (collectively, the "MOOMIN Trademarks") (collectively, the "MOOMIN Trademarks").

9. These Trademark registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates are attached hereto as Exhibit 1.

10. The MOOMIN Trademarks are distinctive and identify merchandise as goods from Plaintiff or its duly authorized licensees.

11. The MOOMIN Trademarks have been continuously used and never abandoned.

12. Plaintiff's MOOMIN Trademarks are exclusive to Plaintiff and are displayed extensively on Plaintiff's Products and in Plaintiff's marketing and promotional materials. Plaintiff's MOOMIN Trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiff at great expense. In fact, Plaintiff has expended significant resources annually in advertising, promoting and marketing goods and services featuring Plaintiff's MOOMIN Trademarks. Plaintiff's promotional efforts include by way of example, but not limitation substantial print media, a website, social media sites and point of sale materials. Because of these and other factors, Plaintiff's MOOMIN Trademarks have become famous worldwide.

13. Plaintiff's MOOMIN Trademarks are distinctive when applied to Plaintiff's products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses

4

others to do so, Plaintiff has ensured that products bearing its Trademarks are manufactured to the highest quality standards. Plaintiff's MOOMIN Trademarks have achieved fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with Plaintiff's MOOMIN Trademarks is incalculable and of inestimable value to Plaintiff.

14. Plaintiff's MOOMIN Trademarks qualify as famous marks as used in 15 U.S.C. §1125 (c)(1) and have been continuously used and never abandoned.

15. Plaintiff has expended substantial time, money and other resources in developing, advertising and otherwise promoting its MOOMIN Trademarks. As a result, products bearing the MOOMIN Trademarks are widely recognized and exclusively associated by consumers, the public and the trade as being products sourced from Plaintiff. Examples of Plaintiff's products sold under the MOOMIN Trademarks include:

| Legitimate Product | Defendant's Infringing Product |
|---|---|
| (image of white Moomin plush toy) | (image of white Moomin plush keychain with red tag) |

**THE DEFENDANT**

16. Defendant is an individual and business entity who, upon information and belief, primarily resides in the People's Republic of China. Defendant conducts business throughout the

5

United States, including Illinois and within this Judicial District, through the operation of the fully interactive commercial website and online marketplace operating under the Defendant Internet Store. The Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Illinois and this Judicial District.

## THE DEFENDANT'S UNLAWFUL CONDUCT

17. The success of Plaintiff's brand has resulted in its counterfeiting. Plaintiff has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms such as AliExpress and Alipay, including the Defendant Internet Store, which is offering for sale, selling, and importing counterfeit products to consumers in this Judicial District and throughout the United States. Defendant has persisted in creating the Defendant Internet Store. Internet websites like the Defendant Internet Store are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2024 was over $5.4 billion, up from $2.8 billion in 2023. According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the "2021 study"), Internet websites like the Defendant Internet Stores are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

18. Upon information and belief, Defendant facilitates sales by designing the Defendant Internet Store so that it appears to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler selling genuine products. The Defendant Internet Store looks sophisticated and accepts payment in U.S. dollars via credit cards and AliExpress and Alipay. The Defendant Internet Store includes images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendant further perpetuates the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers.

19. Plaintiff has not licensed nor authorized Defendant to use its Trademarks and the Defendant is not an authorized retailer of their genuine products.

20. Upon information and belief, Defendant deceives unknowing consumers by using the Plaintiff's MOOMIN Trademarks without authorization within the content, text, and/or meta tags of its websites to attract various search engines looking for websites relevant to consumer searches for Plaintiff's products. Additionally, upon information and belief, Defendant uses other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Store listing shows up at or near the top of relevant search results and misdirect consumers searching for Plaintiff's genuine products. Further, Defendant utilizes similar illegitimate SEO tactics to propel new online marketplace account listings to the top of search results after others are shut down.

21. Defendant goes to great lengths to conceal its identity and often use multiple fictitious names and addresses to register and operate its Internet Store. Upon information and belief, some of the tactics used by the Defendant to conceal its identity and the scope and interworking of its counterfeit operations to avoid being shut down include regularly creating new websites and online

7

marketplace accounts on various platforms using the identity listed in Amended Schedule A to the Second Amended Complaint, as well as other fictitious names and addresses.

22. In addition to operating under a fictitious name, the Defendant in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, when counterfeiters like Defendant receive notice of a lawsuit they will often register new online marketplace accounts under new aliases and move website hosting to rogue servers located outside the United States. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. The 2021 study indicated that the Internet has fueled explosive growth in the number of small packages of counterfeit goods shipped through the mail and express carriers. This growth closely correlates to the growth of the ecommerce industry which now makes up 16.4% of all retail transactions as reported by the Census Bureau of the U.S. Department of Commerce. According to the Department of Homeland Security's 2024 Intellectual Property Rights Seizures Report, the vast majority of Intellectual Property Rights seizures continue to take place within the express consignment and mail shipping methods. 97% of all cargo seizures were made in de minimis shipments.

23. Further, counterfeiters such as Defendant typically operate multiple credit card merchant, AliExpress and Alipay accounts behind layers of payment gateways so that they can continue to operate in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendant maintains off-shore bank accounts and regularly move funds from their AliExpress and Alipay accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of AliExpress and Alipay transaction logs from prior similar cases indicate that offshore counterfeiters

regularly move funds from U.S.-based AliExpress and Alipay accounts to China-based bank accounts outside the jurisdiction of this Court.

24. Defendant, without any authorization or license from Plaintiff, has knowingly and willfully used and continue to use Plaintiff's MOOMIN Trademarks in connection with the advertisement, distribution, offering for sale and sale of counterfeit products into the United States and Illinois over the Internet. The Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, the Defendant has offered to sell counterfeit products into the United States, including Illinois.

25. Defendant's use of Plaintiff's MOOMIN Trademarks in connection with the advertising, distribution, offering for sale and sale of counterfeit products, including the sale of counterfeit products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-25 of this Second Amended Complaint.

27. This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of Plaintiff's Trademarks in connection with the sale, offering for sale, distribution and/or advertising of infringing goods. Plaintiff's MOOMIN Trademarks are highly distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under its Trademarks.

28. Defendant has sold, offered to sell, marketed, distributed and advertised, and is still selling, offering to sell, marketing, distributing and advertising products in connection with Plaintiff's MOOMIN Trademarks without Plaintiff's permission.

9

29. Plaintiff is the owner of the MOOMIN Trademarks (Exhibit 1). The United States Registrations for Plaintiff's MOOMIN Trademarks are in full force and effect. Upon information and belief, Defendant has knowledge of Plaintiff's rights in its Trademarks and are willfully infringing and intentionally using Plaintiff's MOOMIN Trademarks on counterfeit products. Defendant's willful, intentional, and unauthorized use of Plaintiff's MOOMIN Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit products among the general public.

30. Defendant's activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

31. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell and sale of counterfeit Plaintiff's products.

32. Plaintiff has no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their well-known Trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-32 of this Second Amended Complaint.

34. Defendant's promotion, marketing, offering for sale and sale of counterfeit products have created and are creating a likelihood of confusion, mistake and deception among the general public as to the affiliation, connection or association with Plaintiff or the origin, sponsorship or approval of Defendant's counterfeit products by Plaintiff.

35. By using Plaintiff's MOOMIN Trademarks in connection with the sale of counterfeit products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

36. Defendant's conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public under 15 U.S.C. §§ 1114, 1125.

37. Plaintiff has no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510/1, et seq.)

38. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-37 of this Second Amended Complaint.

39. The Defendant has engaged in acts violating Illinois law including, but not limited to, passing off its counterfeit products as those of Plaintiff, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing likelihood of confusion and/or misunderstanding as to an affiliation, connection or association with genuine products, representing that their products have Plaintiff's approval when it does not and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

40. The foregoing Defendant's acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.

41. Plaintiff has no adequate remedy at law, and Defendant's conduct has caused Plaintiff to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendant's unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with it be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using Plaintiff's MOOMIN Trademarks or any confusingly similar trademark or name in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's MOOMIN Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under its Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendant's counterfeit products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing Plaintiff's MOOMIN Trademarks and damaging Plaintiff's reputation and goodwill; and

12

  e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale including Plaintiff's MOOMIN Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

 2) That Defendant, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendant has complied with paragraph 1, a through f, above;

 3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any online marketplaces such as AliExpress and Alipay shall:

  a. disable and cease providing services for any accounts through which Defendant engages in the sale of counterfeit products using Plaintiff's MOOMIN Trademarks including any accounts associated with the Defendant listed in Amended Schedule A; and

  b. disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeit products using Plaintiff's MOOMIN Trademarks;

 4) That Defendant accounts for and pays to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's MOOMIN Trademarks are increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, Plaintiff is awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of its Trademarks;

6) That Plaintiff is awarded their reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated: July 23, 2025                    Respectfully submitted,

                                           By:    */s/ Michael A. Hierl*
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Robert P. McMurray (Bar No. 6324332)
Elizabeth A. Miller (Bar No. 6339398)
John Wilson (Bar No. 6341294)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com
Attorneys for Plaintiff
MOOMIN CHARACTERS OY LTD.

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Second Amended Complaint was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on July 23, 2025.

    s/Michael A. Hierl